UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

MATTHEW A. THOMAS,                    )
                                      )
            Plaintiff,                )
                                      )
v.                                    )        No.:   3:16-CV-631-TAV-CCS
                                      )
UNIVERSITY OF TENNESSEE               )
HOSPITAL, *et al.*,                   )
                                      )
            Defendants.               )

## MEMORANDUM OPINION AND ORDER

The Court is in receipt of a complaint under 42 U.S.C. § 1983 [Doc. 2], a motion for leave to proceed *in forma pauperis* [Doc. 1; *see* Doc. 4], as well as various other motions [*see* Docs. 8, 9, 10, 11, 12, 13], filed by pro se Plaintiff Matthew A. Thomas.  For the reasons set forth herein, Plaintiff's Motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**; Plaintiff's claims for excessive force in violation of the Fourth Amendment against Buck, Bush, and Moore in their individual capacities, as well as his claims for assault and battery against Buck, Bush, and Moore under Tennessee law, will proceed.  The remainder of Plaintiff's federal and state claims will be **DISMISSED**, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A), for failure to state a claim upon which relief may be granted.  Plaintiff's motion for ruling on IFP status [Doc. 11] will be **DENIED AS MOOT**, his motion to appoint counsel [Doc. 9] will be **DENIED,** and his numerous motions requesting discovery [Docs. 8, 10, 12, 13] will be **DENIED AS PREMATURE**.

## I.     MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

Plaintiff is presently incarcerated at the West Tennessee State Penitentiary.  It appears from the motion for leave to proceed *in forma pauperis* that Plaintiff lacks sufficient financial resources to pay the $350.00 filing fee.  Accordingly, pursuant to 28 U.S.C. § 1915, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**.

Because Plaintiff is an inmate at the West Tennessee State Penitentiary, he is herewith **ASSESSED** the civil filing fee of $350.00.  Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Plaintiff's inmate trust account at the institution where he now resides is directed to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, TN, 37902, as an initial partial payment, whichever is greater of:

(a)     twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or

(b)     twenty percent (20%) of the average monthly balance in Plaintiff's inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk.  28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to send a copy of this Memorandum and Order to the Warden of the West Tennessee State Penitentiary, the Commissioner of the Tennessee Department of Correction, and the Attorney General for the State of Tennessee to ensure that the custodian

of Plaintiff's inmate trust account complies with that portion of the Prison Litigation Reform Act relating to payment of the filing fee. The Clerk is further **DIRECTED** to forward a copy of this Memorandum and Order to the Court's financial deputy.

## II. PLAINTIFF'S COMPLAINT

In his Complaint, Plaintiff names as Defendants "Timothy Hewitt, Public Defender," "University of Tennessee Hospital" (hereinafter "UT Hospital"), and several alleged employees of UT Hospital: "Sonny Booth, dispatch" "Christopher Buck, security" "f/n/u D. Moore, security" and "Chuck Bush, EDT" [Doc. 2 at 1]. Plaintiff alleges that, on October 24, 2015, he received information that his girlfriend, Alice Adams, had been in a car accident [*Id.* at 4]. He went to UT Hospital, where he found Adams in a hallway; she informed him of her injuries, and he "began to try to inquire into why Adams was not being treated" [*Id.*]. While talking to Adams, Plaintiff "noticed bruises all over Adams's neck and began examining [her] body for other injuries" [*Id.*]. Plaintiff was able to speak with a nurse at 10:30 in the morning, who stated that Adams was "ready for discharge" [*Id.*].[1] Plaintiff became "concerned about Adams['] well-being and insinuated" that they should leave to go to another hospital; he also "requested a nurse to speak to her supervisor" [*Id.* at 5].

Buck then approached, stating "you need to calm down," and then "grabbed [Plaintiff] by the arm and forcefully escorted him" to another room "to seclude him from other pedestrians that were present" [*Id.*]. Plaintiff complied with Buck's request that he put his

---

[1] Plaintiff's factual narrative is internally inconsistent with respect to the timing of events on the day in question. He first states that he learned of the accident "in the late afternoon hours of October 24, 2015," but then goes on to state that he was advised that Adams was ready for discharge "[a]t 10:30 a.m." [Doc. 2 at 4].

hands on the wall, and Buck then advised Plaintiff that he was "under arrest for assaulting a female patient by strangulation" [*Id*.]. Plaintiff pleaded with Buck to "speak with Alice and review the video footage" and stated that there had been "a misunderstanding" [*Id*.]. Buck then "grabbed [Plaintiff's] right arm and jammed it up into his body while he ran [Plaintiff's] head into the wall" [*Id*.]. Plaintiff fell to his knees, realized that his nose was bleeding, and asked Buck "to please stop hitting him" [*Id*.]. Buck used his knee to hit Plaintiff in the head once more [*Id*.].

Plaintiff "managed to pull himself off of the floor and attempt to escape" [*Id*.]. Before he reached the exit doors, he was tasered by Moore, then again by Buck, then once again by Moore [*Id*.]. Buck tackled Plaintiff while he was on his knees and held him to the floor while Moore "continued to energize and deploy his taser" [*Id*.]. Buck handcuffed Plaintiff, and told him: "[you're] lucky we didn't let the K9 loose on you, because this is personal that wasn't an option" [*Id*.].

Adams yelled at Buck and Moore that Plaintiff "didn't do anything" and asked them not to hurt him [*Id*.].[2] After Adams was placed into a closet in the hallway, Buck placed Plaintiff on the hallways floor and "began kicking [him] in the face"; Bush "came and assisted by holding [Plaintiff to the floor]," while Adams continued to "frantically plead[]" for Plaintiff's safety from the confines of the closet [*Id*. at 5-6]. Defendants stopped the assault only when Plaintiff "began choking on his own blood," at which point, he was escorted to a holding "cell" [*Id*. at 6].

---

[2] Plaintiff's factual narrative is unclear as to whether Adams traveled to the alternate location where Plaintiff was taken or whether Buck returned Plaintiff to the location where Adams had been waiting upon subduing and handcuffing him.

When questioned by the police, Buck stated that Plaintiff "had assaulted him and other security officers after he strangled [Adams] on a stretcher in the hallway"; the other officers involved gave similar accounts of the incident [*Id*.]. Plaintiff maintains that these accounts were "fabricated," noting that Adams "continuously denied" that Plaintiff strangled her and refused to sign a statement written by Buck regarding the incident [*Id*. at 6-7].

Shortly thereafter, Plaintiff was examined by a doctor, who determined that his injuries—including a wounded lip, bruising, four broken teeth, and fractures of the jaw, nose, and various facial bones—were "caused by blunt force trauma" [*Id*. at 6]. After he was treated for his injuries, Plaintiff was taken to Knox County Jail, where he was "booked on charges ranging from aggravated assault on public officials [to] strangulation of Alice Adams" [*Id*.].

Defendant Hewitt was appointed to represent Plaintiff with respect to these charges [*Id*.]. Plaintiff maintains that Hewitt did not adequately represent him, because he failed to fully investigate the incident or procure useful discovery materials, and because he "ratified . . . coercive tactics" used to induce Plaintiff's guilty plea, despite the fact that he was aware that the charges against Plaintiff were based on false statements [*Id*. at 6-7].[3]

---

[3] Plaintiff alleges that "the account and descriptions of what happened given by Booth, Buck, Bush and Moore did not even come close to matching the video footage of the incident" [Doc. 2 at 7–8]. However, Plaintiff repeatedly asserts that Hewitt failed to procure video footage of the incident and claims that the UT Hospital Defendants "suppressed" the evidence [*See generally* Doc. 2]. Additionally, he has also filed numerous motions before the Court requesting access to such video footage [*See* Docs. 8, 10, 12, 13]. The Court is thus left to infer that Plaintiff has not, in fact, viewed any such video footage, and that his statement that the video footage contradicts the Defendants' version of the incident in question is mere speculation or assumption derived from Plaintiff's own recollection of the events of October 24, 2015.

Based on these allegations, Plaintiff raises the following claims:

(1) excessive force in violation of 42 U.S.C. § 1983 and the Eighth Amendment to the U.S. Constitution against

    (a) Buck, Moore, and Bush, based on their actions during the course of Plaintiff's arrest and detention, and

    (b) UT Hospital for adopting "procedures, practices or customs" which allowed the individual defendants to use excessive force;

(2) denial of procedural due process in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment against Buck Moore, Booth, Bush, and Hewitt based on the destruction, concealment, and/or suppression of exculpatory evidence;

(3) denial of substantive due process in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment against

    (a) Moore, Booth, and Bush based on

        (1) fabrication of evidence for the purpose of having Plaintiff prosecuted;

        (2) intentional or reckless failure to investigate

    (b) Hewitt for supporting the fabrication by inducing Plaintiff to enter a guilty plea, and

    (c) UT Hospital based on a theory of supervisory liability;

(4) that all of the Defendants conspired to deprive Plaintiff of his constitutional rights, in violation of 42 U.S.C. § 1983;

(5) that each of the Defendants demonstrated deliberate indifference to Plaintiff's constitutional rights in violation of 42 U.S.C. § 1983 by failing to intervene in or prevent the unconstitutional acts perpetrated by his codefendants;

(6) that each of the Defendants violated various laws of the State of Tennessee, including false arrest, false imprisonment, and aggravated assault, and that UT is liable for any such unlawful acts.

[Doc. 2 at 9–15].

## III. SCREENING STANDARD

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.*, 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Jones v. Bock*, 549 U.S. 199, 213 (2007); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). Courts must liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *but see Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006) (noting that, despite the leniency afforded to *pro se* plaintiffs, the Court is "not require[d] to either guess the nature of or create a litigant's claim.").

The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in [Federal Rule of Civil Procedure] 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). When reviewing a complaint for failure to state a claim under Rule 12(b)(6), the Court must accept as true all of the factual allegations in the complaint. *Iqbal*, 556 U.S. at 678. Although detailed factual allegations are not required, a plaintiff must, at a minimum, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"—that is, make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555, 556 n.3; *see also Iqbal*, 556 U.S. at 678-79 (noting that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is thus not a challenge to the plaintiff's factual allegations, but rather, a "test of the plaintiff's cause of action as stated in the complaint." *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). The reviewing court must determine not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct[.]" *Id*. at 679; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (holding that, in order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.").

## IV.    ANALYSIS

### A.    Federal Claims

In order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law.[4] *Haywood v. Drown*, 556 U.S. 729, 731 (2009); *Dominguez v. Corr. Med. Svcs.*, 555 F.3d 543, 549 (6th Cir. 2009); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that

---

[4] Solely for the purposes of this Order, the Court will assume that Defendants qualify as "state actors" with respect to Plaintiff's claims.

"Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

However, the Supreme Court has held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (footnotes omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (holding that *Heck* bars § 1983 claims that could invalidate a prisoner's conviction and/or sentence regardless of whether damages or equitable relief are sought). Stated another way, "*Heck* makes clear that no cause of action exists [under § 1983] until a conviction is legally eliminated." *Schilling v. White*, 58 F.3d 1081, 1087 (6th Cir. 1995). The *Heck* bar further prevents a prisoner from pursuing claims of ineffective assistance of counsel pursuant to 42 U.S.C. § 1983, as such claims "indirectly challenge the validity of [a prisoner's] confinement and sentence." *Hudson v. Smith*, No. 3:11-cv-40, 2011 WL 161769, at *2 (M.D. Tenn. Jan. 19, 2011) (citing *Taylor v. Oakland Cty. Circuit Court*, 831 F.2d 297 (6th Cir. 1987) (table)); *see also Rushing v. Pennsylvania*, 637 F. App'x 55, 58 (3d Cir. 2016).

In this case, Plaintiff notes that he was charged for criminal offenses stemming from an assault by strangulation on Adams and aggravated assault on public officials—presumably,

the individual Defendants who detained and arrested Plaintiff—and raises numerous federal claims related to his arrest, prosecution, guilty plea, and sentencing for state convictions related to these charges.

Upon review of the allegations and claims, it is clear that, if Plaintiff prevailed on the merits of the majority of his § 1983 claims, his success would necessarily implicate the invalidity of his conviction(s). Specifically, the Court notes that Plaintiff's success as to any his claims for direct constitutional infirmities during the course of his arrest and subsequent criminal proceedings—that is, his claims for false arrest, malicious prosecution, denial of rights to procedural or substantive due process with respect to his arrest and conviction, and/or a conspiracy to have him falsely arrested and prosecuted—would directly imply the invalidity of Plaintiff's conviction(s). Thus, the Court finds that these federal claims are necessarily barred by the *Heck* doctrine unless and until they have been legally eliminated. Plaintiff has not set forth any allegations or evidence that would show that any of his convictions have been vacated or otherwise set aside.[5] Accordingly, under the *Heck* doctrine, Plaintiff has not demonstrated that these causes of action are currently viable pursuant to § 1983. Accordingly, these claims must be dismissed for failure to state a claim.

---

[5] Plaintiff notes that he filed a petition for post-conviction relief with the Circuit Court of Knox County on October 17, 2016, in which he argued that he should be permitted to "withdraw his coerced plea of guilty . . . based in part on ineffective assistance of counsel and suppression of exculpatory evidence" [Doc. 2 at 8]. Plaintiff has not filed any supplement or addendum reflecting any change in the status of his petition; given that both Plaintiff's most recent filing and the records of the Tennessee Department of Corrections reflect that Plaintiff remains incarcerated, the Court must infer that the petition either remains pending or that it is been resolved in favor of affirming Plaintiff's guilty plea and conviction.

Remaining, then, are Plaintiff's claims for excessive force against Buck, Moore, and Bush in their individual capacities and against UT Hospital.[6]  Claims regarding the use of excessive force during the course of an arrest are generally analyzed under the reasonableness standard of the Fourth Amendment, which asks whether an officer's use of force was "objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 388 (1989) (internal quotation marks omitted); *Martin v. City of Broadview Heights*, 712 F.3d 951 (6th Cir. 2013); *see also Khother v. DeEulis*, 527 F. App'x 461 (6th Cir. 2013) (applying the Fourth Amendment reasonableness standard to an excessive force claim based upon the officer's post-arrest actions).  In conducting this analysis, "the court must carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Martin*, 712 F.3d at 951 (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted).  Although several factors—including the severity of the crime, the threat that the arrestee poses to others, and whether the arrestee is actively resisting arrest or attempting to evade arrest—are considered in this analysis, "the court ultimately must determine whether the totality of the circumstances justifies a particular sort of seizure." *Id.*

---

[6] Claims against the individual defendants in their official capacities are construed as claims against the entity itself and, as such, they do not require separate discussion. *See, e.g.*, *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the . . . entity."); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

The Court cannot conclude at the screening phase that Plaintiff's excessive force claims against Buck, Moore, and Bush are barred by the *Heck* doctrine or are otherwise not viable.[7] Liberally construing Plaintiff's allegations and reasonable inferences to be drawn therefrom, the Court finds that Plaintiff has set forth sufficient facts to state a plausible claim for relief as to his claims for excessive force against Buck, Moore, and Bush in their individual capacities.

By contrast, Plaintiff has failed to set forth sufficient factual allegations to allow the Court to infer that UT Hospital is liable for the allegedly unconstitutional force used against him.[8] In order to proceed on such a claim against UT Hospital, Plaintiff must establish the requisite elements for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See, e.g.*, *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017) ("As we and our sister circuits recognize, a private corporation that has contracted to provide essential government services is subject to at least the same rules that apply to public entities."); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996) (applying *Monell* municipal liability standard to private prison sued pursuant to § 1983). Thus, in order to succeed on this claim against UT Hospital, Plaintiff must, at a minimum, demonstrate that (1) his harm was caused by a constitutional violation—in this case, excessive use of force by Bush,

_____

[7] The Court notes that Plaintiff's Complaint is somewhat ambiguous as to the exact charges against him and fails to identify the charge or charges to which he pled guilty pursuant to his plea agreement. Because the record is, at this time, bereft of information regarding Plaintiff's specific conviction(s), the Court cannot say with certainty that Plaintiff's success on his claims of excessive force against the individual defendants would necessarily undermine the validity of his convictions.

[8] Although the University of Tennessee Hospital and/or Medical Center is a private, non-profit corporation, as discussed *infra*, the Court will assume solely for the purpose of this analysis that UT Hospital is a "state actor" subject to suit pursuant to § 1983 under the circumstances set forth in Plaintiff's Complaint.

Buck, and Moore, and (2) UT Hospital itself was responsible for that violation, because of a policy, custom, pattern or practice of the entity that caused Plaintiff's constitutional injury. *See Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *see also Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 941 (M.D. Tenn. 2012); *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.").

Even affording his pleadings a liberal construction, and assuming that Plaintiff could establish that he suffered a constitutional violation based on the use of force by the individual Defendants, the Court nonetheless concludes that Plaintiff's Complaint fails to plead a claim for municipal liability. With respect to the Hospital, Plaintiff's Complaint states only that the Hospital: (1) "is an entity wh[ich] employs Defendants BOOTH, BUCK, MOORE, and BUSH"; (2) "adopted procedures, practices, or customs . . . that allow, among other things, the excessive use of force when other more reasonable and less drastic methods are available"; and (3) is "liable for the acts and omissions of their employees pursuant to their statutory duty [under Tennessee law] to indemnify them" [Doc. 2 at 9].

As noted above, the Court cannot hold an entity liable pursuant to *Monell* solely upon the theory of respondeat superior; accordingly, the Court finds that Plaintiff's allegations regarding state indemnification requirements and the Hospital's status as an employer of Plaintiff's alleged abusers are irrelevant to its consideration of this claim. Additionally, although Plaintiff utilizes the phrase "procedures, practices, and customs," he did not provide any factual allegations regarding such alleged "adopted procedures, practices, or customs"—

13

either written or unwritten—that may have contributed to his harms, or how any such policies or practices may be unconstitutional—either as written or as applied to him. The Court finds that Plaintiff's statement regarding the Hospital's procedures, practices, or customs is overly generalized and no more than a speculative legal conclusion, and thus that he has failed to state a plausible claim for municipal liability under § 1983. Stated another way, because Plaintiff's Complaint fails to demonstrate "more than the mere possibility of misconduct" by UT Hospital, Plaintiff's claim against it must be dismissed for failure to state a claim.

### B.    State Law Claims

Plaintiff has also raised several claims arising under Tennessee law: (1) false arrest and/or imprisonment against all Defendants pursuant to the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. §§ 29-20-101, *et seq.*; (2) "aggravated assault" under Tennessee common law against Defendants Buck, Bush, and Moore; and (3) "statutory" indemnification against all Defendants [Doc. 2 at 14–15]. The Court will address each in turn.

### 1.    TGTLA Claims

The TGTLA governs tort claims against counties, municipalities, and other local governmental agencies in the state of Tennessee, and against their employees in their individual capacities. *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 854 (E.D. Tenn. 2011); *Doyle v. Frost,* 49 S.W.3d 853, 857 (Tenn. 2001); *see also Sneed v. City of Red Bank, Tenn.*, 459 S.W.3d 17, 24–25 (Tenn. 2014) (noting that the TGTLA does not apply to claims against the State of Tennessee itself). However, the UT Hospital is not a county, municipality, or other local governmental agency; rather, it is a private non-profit corporation. *Womble v. Univ. Health Sys., Inc.*, No. E2012-02664-COA-R9CV, 2014 WL 173903, at *1 (Tenn. Ct. App. Jan.

14

16, 2014); Tenn. Code Ann. §§ 49-9-1301, *et seq.* As such, the Court concludes that UT Hospital and its employees are not subject to suit under the TGTLA, and the Court accordingly concludes that Plaintiff has failed to state any claim for relief against the Defendants pursuant to the TGTLA.

Alternatively, the Court would decline to exercise supplemental jurisdiction over these claims. Pursuant to 28 U.S.C. § 1367, even if federal jurisdiction would otherwise be proper, a district court may decline to exercise supplemental jurisdiction if "in exceptional circumstances," there are "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(a), (c)(4). In this case, two compelling reasons support the Court's decision to decline jurisdiction of these claims.

First, as noted, Plaintiff has raised these claims pursuant the TGTLA, which gives the state circuit courts exclusive original jurisdiction over claims brought pursuant to its provisions. Tenn. Code Ann. § 29–20–307. Numerous courts have concluded that the clear and unequivocal preference of the Tennessee legislature "that TGTLA claims be handled by its own state courts" constitutes an exceptional circumstance for declining jurisdiction. *Gregory v. Shelby Cty., Tenn.,* 220 F.3d 433, 446 (6th Cir. 2000); *see also Campbell v. City of Nashville,* No. 310-0397, 2010 WL 3489154, at *5 (M.D. Tenn. Aug. 11, 2010); *Parker v. Henderson Cty., Tenn.,* 450 F. Supp. 2d 842, 857 (W.D. Tenn. 2006); *Spurlock v. Whitley,* 971 F. Supp. 1166, 1185 (M.D. Tenn. 1997).

The most compelling reason to decline jurisdiction over Plaintiff's state law claims for false arrest and false imprisonment claims, however, is the fact that the Court determined that it must dismiss Plaintiffs corresponding *federal* claims for false arrest and false imprisonment

as barred by the *Heck* doctrine.  A decision favorable to Plaintiff as to his *state law* false arrest or false imprisonment claims would imply the invalidity of Plaintiff's state law conviction(s) as readily as a favorable decision to Plaintiff as to the federal corollary of those claims.  Given the Court's determination that Plaintiff's federal claims on this issue must be dismissed, the exercise of jurisdiction over Plaintiff's parallel state law claims appears to the Court to be a needless intervention into state law.  *See, e.g.*, *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law.").  Thus, even if Plaintiff had grounded his false arrest and/or false imprisonment claims in a proper statutory or common law basis, the Court concludes that the principles of comity are sufficiently compelling in this instance for it to decline exercise of supplemental jurisdiction over such claims.  *See Garcia-Melendez v. Gonzalez*, 227 F.Supp.3d 160, 173 (D.P.R. 2017) (noting that dismissal of federal claim for false arrest pursuant to *Heck* doctrine may constitute a compelling reason to decline to exercise supplemental jurisdiction over a state law false arrest claim).  For these reasons, Plaintiff's state law claims for false arrest and/or false imprisonment will be **DISMISSED**.

## 2.    Assault Claims

Plaintiff next raises claims for aggravated assault against Bush, Buck, and Moore. Despite Plaintiff's terminology, aggravated assault is a term used only in criminal statutes in Tennessee, which provide no private right of action or enforcement.  *See* Tenn. Code Ann. §§ 39-13-101, 39-13-102(a); *State Farm Fire & Cas. Co. v. Bonetti*, No. 11-20156, 2012 WL 1252540, at *4 (W.D. Tenn. Apr. 13, 2012) (noting that, although the Complaint couched the

claims in Tennessee's assault and aggravated assault criminal statutes, the plaintiff "is actually asserting a cause of action for assault and battery," as he would be "unable to sue for a violation of the criminal code"). Thus, in Plaintiff's interest, the Court liberally construes this claim as one for assault and battery under Tennessee tort law.[9]

Under Tennessee law, assault and battery is an intentional tort. *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 57 (Tenn. Ct. App. 2013). Assault requires that the defendant "intend[ed] to create an apprehension of harm in the plaintiff," and battery requires "an unpermitted touching of the plaintiff by the defendant" that is so offensive as to "infringe[] on a reasonable sense of personal dignity ordinarily respected in civil society." *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 371 (Tenn. 2011); *Brown*, 428 S.W. 3d at 57; *see also Dillingham*, 809 F. Supp. 2d at 855. An overt act or physical movement is also necessary to find assault. *See Dillingham*, 809 F. Supp. 2d at 855. However, where, as here, the plaintiff alleges that the assault was followed with a battery or physical touching, the overt act requirement is satisfied.

In this case, the Court has found that Plaintiff has set forth allegations sufficient to state plausible claims for excessive force against Defendants Bush, Buck, and Moore; based on those same facts, the Court finds that Plaintiff has sufficiently stated plausible claims for assault and battery against these same Defendants. Accordingly, Plaintiff's claims for assault

---

[9] Unlike the claims for false arrest and false imprisonment, the Court finds no compelling reason to decline to exercise supplemental jurisdiction over Plaintiff's claims for assault and battery at this time, as the Court has not found that Plaintiff's related federal claims are barred or otherwise subject to dismissal. Because the Court holds no concerns regarding issues of comity or needless intervention into state law with respect to Plaintiff's assault and battery claim, it will not decline to exercise supplemental jurisdiction over these claims at this time.

and battery will proceed alongside his claims for excessive force pursuant to § 1983 and the Fourth Amendment.

### 3. Indemnification

In his final state law claim—titled "Indemnification"—Plaintiff states only that UT Hospital and the State of Tennessee—which is not named as a defendant to this action—are "liable for the acts and omission of their employees pursuant to their statutory duty to indemnify them" [Doc. 2 at 15]. However, Plaintiff fails to cite to any specific statute providing for such a duty of indemnification.

The Court's independent research reveals no "statutory" duty of indemnification, other than the optional indemnification provision of the TGTLA. This section provides that "[l]ocal governmental entities shall have the right, as a matter of local option, to elect to insure or to indemnify their employees for claims for which the governmental entity is immune under this chapter arising under state or federal law upon such terms and conditions as the local government may deem appropriate[.]" *See* Tenn. Code Ann. § 29-20-310(d). However, as previously noted, neither the State of Tennessee nor UT Hospital are subject to the provisions of the TGTLA, as they are not "local governmental entities."[10]

---

[10] The Court notes that any reliance upon the TGTLA as imposing a duty of indemnification would prove fatal even if Plaintiff had sued an entity subject to the TGTLA, as Tennessee courts have interpreted this statutory provision as providing local government entities with the "option of insuring or indemnifying" their employees for claims from which the government is immune from suit, while expressly rejecting the notion that the statute triggers a statutory duty to indemnify. *See, e.g.*, *Chambers v. City of Chattanooga*, 71 S.W.3d 281, 286 (Tenn. Ct. App. 2001). The Court also notes that the issue of indemnity is premature, as there has been no determination by this Court or any other that the individual Defendants are liable to Plaintiff for damages related to this incident in question. *See Partee v. Callahan*, No. 208-cv-2246, 2009 WL 10678993, at 2–3 (W.D. Tenn. Sept. 22, 2009).

For these reasons, the Court finds no basis for Plaintiff's contention that UT Hospital owes him a statutory duty of indemnification with respect to the remaining claims in this action—that is, excessive force pursuant to § 1983 and the Fourth Amendment to the U.S. Constitution and assault and battery under Tennessee common law. Plaintiff's claim for statutory indemnification will accordingly be dismissed.

## V.  REMAINING MOTIONS

Finally, Plaintiff has filed several procedural motions since the commencement of this action. First, Plaintiff has filed a motion for ruling on IFP status [Doc. 11], which will be denied as moot in light of the Court's decision herein that Plaintiff's motion for leave to proceed *in forma pauperis* should be granted.

Next, Plaintiff has filed a Motion to appoint counsel, arguing that "this case will require [knowledge of] a lot of particularly complex legal issues" that Plaintiff feels he "may not be able to understand and handle [on his] own" [Doc. 9]. However, there is no "automatic" constitutional right to counsel in a civil rights suit and, typically, counsel is only appointed in an exceptional case. *See, e.g.*, *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996). The Court has carefully considered Plaintiff's motion and apparent ability to represent himself. Based on the issues involved and the complexity of this case, as well as a review of the record as a whole, the Court concludes that no exceptional circumstances are present so as to justify appointment of counsel. *See, e.g.*, *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993); *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Accordingly, Plaintiff's motion for appointment of counsel [Doc. 9] will be denied.

Finally, Plaintiff has filed numerous Motions requesting discovery [Docs. 8, 10, 12, 13]. The Court has now determined that Plaintiff has stated claims that survive the PLRA's screening requirements, and accordingly, it will order service upon the remaining Defendants. Only after the Defendants have been served with copies of the Complaint, and have had occasion to file their answers thereto, can discovery commence. Accordingly, Plaintiff's Motions requesting discovery [Docs. 8, 10, 12, 13] will be denied as premature.

## VI. CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff has stated plausible claims for excessive force in violation of the Fourth Amendment against Buck, Bush, and Moore in their individual capacities, as well as plausible claims for assault and battery against Buck, Bush, and Moore under Tennessee law.

The Clerk is **DIRECTED** to send Plaintiff service packet for Defendants Buck, Bush, and Moore, each of which should contain a blank summons and USM 285 form. Plaintiff is hereby **ORDERED** to complete the service packets and return them to the Clerk's office **within thirty (30) days** from the date of the entry of this Order. If and when the completed service packets are received by the Clerk, each summons **SHALL** be signed and sealed by the Clerk and thereafter forwarded to the U.S. Marshal for service upon Defendants. The Defendants are **ORDERED** to respond to the complaint in the manner and within the time required by the Federal Rules of Civil Procedure. Plaintiff is hereby **ON NOTICE** that failure to return the completed service packets within this time period may result in the dismissal of

this action for failure to prosecute and/or failure to comply with a court order.[11]  *See* Fed. R. Civ. P. 41(b).

All of Plaintiff's remaining federal claims, as well as Plaintiff's state law claims for false arrest and false imprisonment under the TGTLA and for statutory indemnification, are **DISMISSED**.  Plaintiff's claims against Buck, Bush, and Moore in their official capacities are also **DISMISSED**.  All claims against them having been terminated, Defendants UT Hospital, Booth, and Hewitt are accordingly **DISMISSED** from this action.

Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED** and his motion for ruling on IFP status [Doc. 11] is thus **DENIED AS MOOT**.  Plaintiff's motion to appoint counsel [Doc. 9] is **DENIED** and his numerous motions requesting discovery [Docs. 8, 10, 12, 13] are **DENIED AS PREMATURE**.

**ENTER:**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

---

[11]  The Court notes that, pursuant to Local Rule 83.13,

It is the duty of any party not represented by counsel to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. Notification of a change of address must be accomplished by filing a notice with the Clerk and service of the notice upon all other parties within fourteen days of the change of address. In addition, a party appearing for himself/herself shall sign his/her pleadings and include his/her address and telephone number. The failure of a pro se plaintiff to timely respond to an order or pleading addressed to the last address provided to the Clerk may result in dismissal of the case or other appropriate action.

E.D. Tenn. L.R. 83.13.