UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| MATTHEW A. THOMAS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:16-CV-631-TAV-DCP |
| CHRISTOPHER BUCK, D. MOORE, and CHUCK BUSH, | ) | |
| Defendants. | ) | |

# **MEMORANDUM OPINION AND ORDER**

This is a pro se prisoner's civil rights action filed under 42 U.S.C. § 1983. Now before the Court are Plaintiff's motion for depositions by written questions [Doc. 49] and motions for discovery from third parties [Docs. 50 and 51], Defendants' motion for summary judgment [Doc. 53] and motion for protective order [Doc. 56], and Plaintiff's motion to amend/revise his complaint and to compel discovery [Doc. 60]. The Court will address these motions in turn.

## I. BACKGROUND

The Court previously summarized the allegations of Plaintiff's complaint as follows:

> In his Complaint, Plaintiff names as Defendants "Timothy Hewitt, Public Defender," "University of Tennessee Hospital" (hereinafter "UT Hospital"), and several alleged employees of UT Hospital: "Sonny Booth, dispatch" "Christopher Buck, security" "f/n/u D. Moore, security" and "Chuck Bush, EDT." Plaintiff alleges that, on October 24, 2015, he received information that his girlfriend, Alice Adams, had been in a car

accident. He went to UT Hospital, where he found Adams in a hallway; she informed him of her injuries, and he "began to try to inquire into why Adams was not being treated." While talking to Adams, Plaintiff "noticed bruises all over Adams's neck and began examining [her] body for other injuries." Plaintiff was able to speak with a nurse at 10:30 in the morning, who stated that Adams was "ready for discharge." Plaintiff became "concerned about Adams['] well-being and insinuated" that they should leave to go to another hospital; he also "requested a nurse to speak to her supervisor."

Buck then approached, stating "you need to calm down," and then "grabbed [Plaintiff] by the arm and forcefully escorted him" to another room "to seclude him from other pedestrians that were present."

Plaintiff complied with Buck's request that he put his hands on the wall, and Buck then advised Plaintiff that he was "under arrest for assaulting a female patient by strangulation." Plaintiff pleaded with Buck to "speak with Alice and review the video footage" and stated that there had been "a misunderstanding." Buck then "grabbed [Plaintiff's] right arm and jammed it up into his body while he ran [Plaintiff's] head into the wall." Plaintiff fell to his knees, realized that his nose was bleeding, and asked Buck "to please stop hitting him." Buck used his knee to hit Plaintiff in the head once more.

Plaintiff "managed to pull himself off of the floor and attempt to escape." Before he reached the exit doors, he was tasered by Moore, then again by Buck, then once again by Moore. Buck tackled Plaintiff while he was on his knees and held him to the floor while Moore "continued to energize and deploy his taser." Buck handcuffed Plaintiff, and told him: "[you're] lucky we didn't let the K9 loose on you, because this is personal that wasn't an option."

Adams yelled at Buck and Moore that Plaintiff "didn't do anything" and asked them not to hurt him. After Adams was placed into a closet in the hallway, Buck placed Plaintiff on the hallways floor and "began kicking [him] in the face"; Bush "came and assisted by holding [Plaintiff to the floor]," while Adams continued to "frantically plead[]" for Plaintiff's safety

2

from the confines of the closet. Defendants stopped the assault only when Plaintiff "began choking on his own blood," at which point, he was escorted to a holding "cell."

When questioned by the police, Buck stated that Plaintiff "had assaulted him and other security officers after he strangled [Adams] on a stretcher in the hallway"; the other officers involved gave similar accounts of the incident. Plaintiff maintains that these accounts were "fabricated," noting that Adams "continuously denied" that Plaintiff strangled her and refused to sign a statement written by Buck regarding the incident.

Shortly thereafter, Plaintiff was examined by a doctor, who determined that his injuries—including a wounded lip, bruising, four broken teeth, and fractures of the jaw, nose, and various facial bones—were "caused by blunt force trauma." After he was treated for his injuries, Plaintiff was taken to Knox County Jail, where he was "booked on charges ranging from aggravated assault on public officials [to] strangulation of Alice Adams."

Defendant Hewitt was appointed to represent Plaintiff with respect to these charges. Plaintiff maintains that Hewitt did not adequately represent him, because he failed to fully investigate the incident or procure useful discovery materials, and because he "ratified . . . coercive tactics" used to induce Plaintiff's guilty plea, despite the fact that he was aware that the charges against Plaintiff were based on false statements.

[Doc. 15 p. 3–15 (internal footnotes and citations omitted)]. The Court screened the complaint and allowed only Plaintiff's claims for excessive force and state law claims for aggravated assault against Defendants Buck, Moore, and Bush to proceed in this action, though it noted that the excessive force claims may be barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) [Doc. 15 p. 10–12 & n.7, 16–18, 20].

## II. MOTION TO AMEND

In his motion to amend his complaint and to compel discovery, Plaintiff requests to amend his complaint "and state a claim [upon] which relief can be granted" based on his assertion that he "has stated his claim where [D]efendants do not understand" and also to compel Defendants to respond to discovery requests [Doc. 60 p. 1]. In their response in opposition to this motion, Defendants assert that Plaintiff's motions for discovery were not timely, that Plaintiff did not include an amended complaint with this motion in violation of this Court's local rule, and that any amendment to the complaint would be futile because Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486 (1994) for the reasons set forth fully in their memorandum in support of their motion for summary judgment [Doc. 57].

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after service, or 21 days after service of a responsive pleading or service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1)(A). Outside of this window, a party may only amend its pleading with written consent of the opposing parties or leave from the Court. Fed. R. Civ. P. 15(a)(1)(B). In deciding whether to grant leave to amend a pleading, a district court may consider the following: (1) undue delay in filing; (2) lack of notice to the opposing party; (3) bad faith by the moving party; (4) failure to cure deficiencies by previous amendments; (5) undue prejudice to the opposing party; and (6) futility of amendment. *Coe v. Bell*, 161 F.3d 320,

341 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Court notes that the undisputed facts in the record establish that at least some of Plaintiff's allegations of excessive force on the parts of Defendants arise out of the same events as those underlying Plaintiff's criminal convictions for the aggravated assault of Alice Adams and the assaults of Defendants Buck and Bush [Doc. 15 p. 3–15; Doc. 53-1 p. 17–19].[1] Regardless, as the Court cannot determine at this time that allowing Plaintiff to file an amendment would be futile or otherwise improper, Plaintiff's motion to amend/revise his complaint and to compel discovery [Doc. 60] will be **GRANTED in part** only to the extent that Plaintiff will have **fifteen (15) days** from the date of entry of this order to file an amended complaint. Accordingly, Defendants' motion for summary judgment [Doc. 53] will be **DENIED without prejudice** and the Court will enter an amended scheduling order contemporaneously with this order. Also, the Court will address all discovery issues below.

---

[1] The Court further notes that while Plaintiff asserts in his second (and untimely) response in opposition to Defendants' motion for summary judgment that his complaint also alleges that Defendants used excessive force against him after he had handcuffs on and was under control and that those claims therefore would not be barred by *Heck* [Doc. 65 p. 2–4], no verified and/or sworn evidence in the record suggests that any Defendant used excessive force against Plaintiff after Plaintiff had stopped resisting arrest such that any Defendant may be liable for excessive force despite Plaintiff's underlying criminal convictions for assault. *See* 28 U.S.C. § 1746; *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991) (providing that a court may not consider unsworn statements when ruling on a motion for summary judgment); *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 611–12 (6th Cir. 2014) (noting that in determining whether *Heck* bars an excessive force claim, the issue is whether the defendant's alleged use of excessive force occurred "'*after* the suspect ceases resisting arrest'").

5

**III.     DISCOVERY MOTIONS**

As set forth above, Plaintiff has filed a motion to depose Defendants Buck and Moore and former Defendant Booth by written questions [Doc. 49] and two motions seeking to obtain security footage and other discovery from third parties [Docs. 50 and 51]. In response, Defendants have filed a motion for protective order [Doc. 56] and a memorandum in support thereof [Doc. 57] in which they note that Plaintiff filed these motions too late based upon the scheduling order's deadline for all discovery methods, including motions relating to discovery, and that they filed a motion for summary judgment asserting that Plaintiff's claims are barred by *Heck* two days after the Clerk docketed these discovery motions [Doc. 57 p. 3–6]. Thus, they assert that Plaintiff's motions are untimely and/or futile in light of their motion for summary judgment and request that the Court enter an order forbidding Plaintiff from obtaining discovery and providing that Defendants are not required to respond to Plaintiff's discovery requests [*Id.* at 6].

First, it is apparent from Plaintiff's motion to depose by written questions that while the Court screened the complaint and allowed only Plaintiff's claims for excessive force and state law claims for aggravated assault against Defendants Buck, Moore, and Bush to proceed, Plaintiff believes that Sonny Booth is still a Defendant in this action [Doc. 49 p. 1 (referring to "Defendant Sonny Booth")]. Moreover, as Defendants correctly point out, while Plaintiff seeks discovery from third parties in his other motions [Docs. 50 and 51], he has not requested issuance of subpoenas. Further, even if Plaintiff had requested subpoenas, it is unclear whether Plaintiff has sought to obtain the requested information

6

and/or video footage or documents from Defendants by sending them interrogatories and/or requests to produce in accordance with Rules 33 and 34 of the Federal Rules of Civil Procedure and has been unable to do so. Thus, any request for subpoenas for this information from third parties would be premature. Moreover, this Court's local rule provides that parties generally should not file interrogatories, requests for production and inspection, requests for admission, and responses to discovery requests with the Court. E.D. Tenn. LR 5.3. Also, while Defendants seek a protective order based on the untimeliness of Plaintiff's discovery motions and their pending motion for summary judgment, those arguments are now moot, as the Court will enter an amended scheduling order and deny their motion for summary judgment without prejudice for the reasons set forth above.

Thus, Plaintiff's motion to depose through written depositions [Doc. 49] and for discovery from third parties [Docs. 50 and 51] will be **DENIED without prejudice**, Defendants' motion for protective order [Doc. 56] will be **DENIED as moot**, and the parties shall pursue discovery in accordance with the amended scheduling order entered contemporaneously herewith.

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion to amend/revise his complaint and to compel discovery [Doc. 60] is **GRANTED in part** only to the extent that Plaintiff shall have **fifteen (15) days** from the date of entry of this order to file an amended complaint;

2. Plaintiff is **NOTIFIED** that any amended complaint Plaintiff files will completely replace the previous complaint;

3. Plaintiff is also **NOTIFIED** that if he fails to timely comply with this order, this action will be dismissed for failure to prosecute and to follow the orders of this Court;

4. Defendants' motion for summary judgment [Doc. 53] is **DENIED without prejudice;**

5. Plaintiff's motion to depose through written depositions [Doc. 49] and for discovery from third parties [Docs. 50 and 51] are **DENIED without prejudice**;

6. Defendants' motion for protective order [Doc. 56] is **DENIED as moot**,

7. The Court will enter an amended scheduling order contemporaneously with this memorandum and order; and

8. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within **fourteen (14) days** of any change in address may result in the dismissal of this action.

**ENTER**:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE