UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

MATTHEW A. THOMAS,                   )
                                     )
            Plaintiff,               )
                                     )
v.                                   )       No.    3:16-CV-631-TAV-DCP
                                     )
CHRISTOPHER BUCK,                    )
D. MOORE, and                        )
CHUCK BUSH,                          )
                                     )
            Defendants.              )

## MEMORANDUM OPINION

On October 24, 2015, Plaintiff visited his girlfriend, Alice Adams, who had been injured in a car wreck that afternoon, at the hospital where Defendants worked [Doc. 76 p. 4–6]. During this visit, Plaintiff alleges, he began to inquire as to why Adams was not being treated and became concerned about her well-being [*Id.* at 5–6]. He also alleges that he noticed bruising around her neck [*Id.* at 5]. Plaintiff alleges that he told Adams that they could go to another hospital for treatment [*Id.* at 6]. Then, Plaintiff alleges, Defendants forcefully escorted Plaintiff to another area of the hospital, where, despite Plaintiff's compliance with their orders, Defendants attacked him, asserting that he had assaulted a female patient by strangulation [*Id.*]. Plaintiff alleges that he insisted there was a misunderstanding and attempted to escape Defendants' "assaults" [*Id.*]. He alleges that he was then tased before being handcuffed and attacked again [*Id.*].

Plaintiff later pled guilty to three counts of assault arising out of his attacks on Adams and two Defendants during this hospital visit [Docs. 53-1, 53-2]. In doing so,

Plaintiff admitted that he "was under the influence of alcohol" at the time and that the factual basis for Plaintiff's guilty plea, to which Plaintiff did not object or add any information, established that Plaintiff yelled at and began strangling Adams and then assaulted Defendant Buck "by striking [him] in the left side of his face" and Defendant Bush "by pushing [him] in the lower back and side of his hip" when they attempted to intervene [Doc. 53-1 p. 17–19].

Plaintiff, now a prisoner of the Tennessee Department of Correction, filed a complaint for violation of his civil rights pursuant to 42 U.S.C. § 1983 arising out of these events that is proceeding as to his excessive force and state law aggravated assault claims [Doc. 15 p. 20]. Now before the Court is Plaintiff's motion to compel discovery [Doc. 78]. Defendants filed a response in opposition in which they seek a protective order [Doc. 79], and Plaintiff replied [Doc. 82]. Plaintiff also sets forth allegations related to this motion in his motion for default judgment [Doc. 83] and his response in opposition to Defendant's motion for summary judgment [Doc. 86].

Also before the Court is Defendants' motion for summary judgment [Doc. 80]. In support of their motion, defendants submitted affidavits from Defendants Buck and Bush [Docs. 80-1, 80-2], a transcript of the hearing where Plaintiff pled guilty to assault on Adams and Defendants Buck and Bush [Doc. 53-1], copies of the relevant criminal judgments [Doc. 53-2],[1] and a memorandum [Doc. 81]. Plaintiff filed a response in

---

[1.] Defendants specifically incorporate the transcript and criminal judgments, which they filed as exhibits to their first motion for summary judgment that the Court denied without prejudice, into the instant motion for summary judgment [Doc. 80 p. 1].

opposition with an affidavit from Adams [Doc. 86], and Defendants filed a reply [Doc. 88] and affidavits of complaint from Plaintiff's arrest [Doc. 88-1].

For the reasons that follow, Plaintiff's motion to compel discovery [Doc. 78] will be **DENIED**, Defendants' motion for summary judgment [Doc. 80] will be **GRANTED**, all other pending motions [Docs. 79, 83] will be **DENIED as moot**, and this action will be **DISMISSED without prejudice**.

## I.    Motion to Compel Discovery

Plaintiff has filed an undated motion to compel discovery [Doc. 78], which the Court received on September 9, 2019, in which he alleges that the Court served Defendants with discovery documents on April 8, 2019, but the Defendants have not responded and have therefore waived any objections thereto.  The Court did not, however, enter an order on April 8, 2019.  It appears that this argument is likely referring to the Court's June 11, 2019 order [Doc. 70] addressing Plaintiff's discovery motions, which were docketed on April 8, 2019 [Docs. 49, 50, 51].  In that order, the Court denied Plaintiff's discovery motions without prejudice based on its entry of an amended scheduling order [Doc. 71 p.1] and therefore denied Defendants' motion for protective order regarding these motions as moot [Doc. 70 p. 8].

In their response in opposition to this motion, Defendants state that Plaintiff did not notify them that he sought discovery based on his previously-filed discovery requests until he filed this motion [Doc. 79 p. 1–2].  Defendants therefore assert that Plaintiff's request

for discovery in this motion is untimely, as the applicable discovery deadline was September 3, 2019 [Doc. 79 p. 4–6].

Plaintiff filed a reply stating that he had filed "second amended motions for discovery on time" with the Court and Defendants with a "postage stamp of mailing" [Doc. 82 p. 1], but no such filings are in the record. Plaintiff also filed a motion for default judgment [Doc. 83], asserting that on June 11, 2019, the Court granted his motion to compel discovery that "set[] a 14 day time scheduling," [*Id.* at 1] but that Defendants have not complied therewith [*Id.* at 1–2].[2] Also, in his response in opposition to Defendants' motion for summary judgment, Plaintiff asserts that he should be allowed to obtain discovery prior to a ruling on Defendants' motion for summary judgment [Doc. 86 p. 3].

Accordingly, the Court must determine whether to (a) grant Plaintiff's motion to compel discovery and require Defendants to respond to Plaintiff's discovery requests prior to ruling on Defendants' motion for summary judgment, or (b) deny Plaintiff's motion to compel discovery and rule on Defendants' motion for summary judgment. The Court will therefore first address Plaintiff's motion to compel discovery.

"The general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance By and Through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). In ruling on a party's request for discovery in the face of a motion for summary judgment, the primary consideration is

---

[2] Plaintiff also states in this motion that Defendants have not complied with assisting Plaintiff "in obtaining the verification requested" for "over a year" but does not set forth any facts explaining this allegation [Doc. 83 p. 1].

whether the moving party diligently pursued discovery. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010). The Court considers the following factors: (1) when the party seeking discovery learned of the discovery issue, (2) how further discovery would affect the summary judgment ruling, (3) the length of the discovery period, (4) whether the moving party was dilatory, and (5) whether the adverse party was responsive. *Id.*

Also, under Rule 56(d) of the Federal Rules of Civil Procedure, a party served with a motion for summary judgment that cannot present essential facts to justify its opposition thereto may set forth the specific reasons it cannot do so through affidavit or declaration, at which point a court may defer consideration of or deny the summary judgment motion, allow the parties to engage in discovery, or "issue any other appropriate order." Fed. R. Civ. P. 56(d). Such motions "should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Doe v. City of Memphis*, 928 F.3d 481, 490–91 (6th Cir. 2019).

First, the main discovery that Plaintiff seeks in his motion to compel are video recordings of the underlying incident and his medical records [Doc. 78]. Plaintiff, however, has not filed any sworn statement that he could not present essential facts in response to Defendants' motion for summary judgment without such discovery pursuant to Rule 56(d).

Further, the record establishes that while Plaintiff has sought discovery of the relevant video recordings and medical records repeatedly throughout this case, he has not

diligently done so during the discovery period. Specifically, on September 17, 2018, the Court received Plaintiff's first motion for discovery that was not premature[3] [Doc. 31] after Defendants had filed a motion to dismiss [Doc. 28]. In response, Defendants sought to stay discovery pending a ruling on their motion to dismiss [Doc. 34]. On March 4, 2019, the Court entered an order denying Defendants' motion to stay discovery and granting Plaintiff's motion for discovery to the extent that the Court entered a scheduling order setting a deadline of April 8, 2019, for the completion of all discovery [Docs. 39, 40]. While this left only slightly more than a month for the parties to engage in discovery, Plaintiff did not promptly send Defendants discovery requests or seek extension of this discovery period.

Instead, Plaintiff waited until April 1, 2019, a week before the applicable discovery deadline, to file several motions for discovery [Docs. 49, 50, 51]. Defendants opposed these motions by asserting that they were untimely and that *Heck v. Humphrey*, 512 U.S. 477 (1994) clearly barred Plaintiff's claims; defendants therefore sought a protective order [Docs. 56, 57].

On June 11, 2019, the Court denied Plaintiff's pending discovery motions without prejudice and denied Defendants' motion for protective order as moot [Doc. 70 p. 6–8] due to its entry of an amended scheduling order setting a new discovery deadline of September 3, 2019 [Doc. 71 p. 1], which provided the parties more than eleven (11) weeks for

---

[3.] Plaintiff filed a number of motions for discovery in this case before Defendants filed an answer. The Court denied those motions as premature [Docs. 15, 26].

discovery. Plaintiff did not file anything else with the Court regarding discovery until he filed his pending motion to compel discovery on August 27, 2019, once again a week before the discovery deadline [Doc. 78].

As discussed, Plaintiff states in his motion to compel that the Court served Defendants with discovery on April 8, 2019 [Doc. 78 p. 1]. Plaintiff also states in his response in opposition to Defendants' motion for protective order that he sent "second amended motions for discovery" to the Court and Defendants [Doc. 83]. However, the record does not support these assertions.

Specifically, as set forth above, it appears that Plaintiff's statement that the Court "served Defendants with discovery" on April 8, 2019, is likely a misguided reference to the order that the Court entered on June 11, 2019. In this order, the Court denied without prejudice Plaintiff's pending discovery motions, which the Clerk had docketed on April 8, 2019, based on its entry of an amended scheduling order with a new discovery deadline, and therefore denied Defendants' motion for protective order regarding these motions as moot [Doc. 70; Doc. 71 p. 1]. Plaintiff's motion to compel and motion for default judgment suggest that Plaintiff interpreted this order to grant his motions for discovery. But that is not a reasonable interpretation of this order. To the contrary, the order denied Plaintiff's motions for discovery without prejudice and stated that the parties "shall **pursue** discovery in accordance with the amended scheduling order entered contemporaneously herewith" [Doc. 70 p. 6–8 (emphasis added)].

Moreover, even if Plaintiff believed that Defendants were supposed to answer his previously discovery requests based on the Court's June 11, 2019 order, Plaintiff did not diligently pursue responses to these discovery requests in accordance with this assumption. Instead, he waited until approximately eleven (11) weeks after entry of this order and a week before the applicable deadline for completion of discovery, specifically August 27, 2019, to file his motion to compel [Doc. 78 p. 4]. Thus, although the record establishes that Plaintiff has repeatedly sought the subject discovery from the beginning of this case, Plaintiff failed to properly pursue that discovery during the two appropriate periods of time in which he had sufficient opportunity to do so.

Further, discovery of the video recordings and medical records that Plaintiff seeks would not affect the Court's decision as to whether Defendants are entitled to summary judgment. Specifically, as set forth more fully herein, the sworn filings in this case establish that the only remaining dispute herein is whether Plaintiff's claim that Defendant Buck used excessive force against him by "ramming" his head into a wall arises out of the same incident underlying Plaintiff's conviction for assault on Defendant Buck, or whether Plaintiff had stopped resisting arrest at the time of this use of force in a manner that would separate Plaintiff's assault conviction from this use of excessive force such that *Heck* would not bar this claim. Because the evidence establishes that Plaintiff's act of striking Defendant Buck, which underlies Plaintiff's conviction for assault of Defendant Buck, and Defendant Buck's alleged "ramming" of Plaintiff's head into the wall arise out of the same confrontation, the requested discovery would not change the conclusion in this case. In

other words, even if the video recordings and medical records that Plaintiff seeks in his motion to compel discovery establish that Defendant Buck used excessive force against him in the manner alleged in Plaintiff's sworn filings, a finding in Plaintiff's favor for this excessive force claim would invalidate Plaintiff's conviction for assault on Defendant Buck and therefore *Heck* would still bar this claim. *Cummings v. City of Akron*, 418 F.3d 676, 682–83 (6th Cir. 2005).

Accordingly, Plaintiff's motion to compel discovery [Doc. 78] will be **DENIED**, and the Court will not defer ruling on Defendants' motion for summary judgment.

## II.     Summary Judgment

### A.     Factual Background

#### 1.     Second Amended Complaint[4]

As the Court has previously noted, on October 24, 2015, Plaintiff visited Adams, who had been injured in a car accident that afternoon, at the hospital where Defendants were security guards [Doc. 76 p. 4–6]. While he was speaking to Adams, Defendant Buck approached him, told him to calm down, grabbed his arm, had him place his hands on the

---

[4.] As the Court only allowed Plaintiff's claims for excessive force and state law claims for aggravated assault to proceed in this action [Doc. 15 p. 10–12, 16–18, 20], the Court includes only the allegations of Plaintiff's second amended complaint that relate to these claims.

Also, for the reasons set forth more fully below, the only allegations in Plaintiff's second amended that are sworn, and therefore may be considered in ruling on Defendants' motion for summary judgment, are his allegations that Defendant Buck shoved him against the wall before handcuffing him, ramming his head into the wall, and later re-handcuffing him [Doc. 72; Doc. 76 p. 1]. *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991) (providing that a court may not consider unsworn statements when ruling on a motion for summary judgment). Regardless, the Court provides a full summary of the second amended complaint for context.

wall, and told him that he was under arrest for assaulting a female patient by strangulation [*Id.* at 1, 6].  Defendant Buck then shoved Plaintiff against the wall and arrested him, at which point Plaintiff was "detained [and] that's when [Defendant] Buck rammed [Plaintiff's] head into the wall" [*Id.*].  Defendant Buck next struck Plaintiff in the back of his head with his knee, at which point Plaintiff "attempt[ed] to escape from the assaults" [*Id.* at 6].  Plaintiff almost made it to the exit doors, but Defendants Moore and Buck tased him, after which Defendant Buck tackled Plaintiff while he was on his knees and held him down while Defendant Moore "continued to energize and deploy his taser even though Plaintiff was subdued" [*Id.*].

Defendant Buck then stated that Plaintiff was lucky that they had not "let the K9 loose on [him], because this is personal that wasn't an option" and Adams told Defendants Buck and Moore not to hurt Plaintiff because he did not do anything [*Id.*].  Defendant Buck then placed Plaintiff on the floor and began kicking him in the face while Defendant Bush assisted [*Id.* at 7].  Also, Plaintiff later tried to pull his hands through his handcuffs, but "[Defendant] Buck secured [his] hands and re cuffed them together" [*Id.* at 7, 1].

### 2.    Sworn Filings

#### a.    Defendant Buck

In his affidavit in support of Defendants' motion for summary judgment [Doc. 80-2], Defendant Buck testifies that after the dispatch officer advised him that he had witnessed a white male putting his hands around a female patient's neck, he observed

Plaintiff standing over that female patient with his finger in her face and yelling at her [*Id.* at 1–2]. Defendant Buck observed red marks on the female patient's "jaw line and neck" and was concerned for her safety, so he intervened and attempted to escort Plaintiff away from her [*Id.* at 2]. When he did so, he "could smell the odor of alcohol emanating from the Plaintiff" and was concerned for his safety and the safety of others [*Id.*]. Accordingly, Defendant Buck intended to place Plaintiff under arrest and requested that Plaintiff turn and place his hands on the wall so that he could apply handcuffs [*Id.*].

While Plaintiff initially complied, he kept turning his head in either direction, and ultimately turned and assaulted Defendant Buck "by striking [him] in the face with his left elbow and immediately fled" [*Id.*]. Defendant Buck "dropped his hand cuffs and grabbed the Plaintiff's right shoulder and left arm in an effort to bring the Plaintiff to the ground. Emergency medical technician [Defendant] Chuck Bush assisted in trying to gain control of the Plaintiff although [the Plaintiff continued to resist by flailing his arms. In the course of the struggle, [Defendant Buck] observed Plaintiff strike [Defendant] Bush in his lower back" [*Id.*].

Defendant Buck further testifies that Defendant Moore "deployed his Taser in an effort to apprehend the Plaintiff in the hallway with no apparent effect. The Plaintiff continued to flee, turning at the end of the hallway and proceeding down another hallway towards the emergency department registration area" [*Id.*]. Defendant Buck chased Plaintiff and ordered him to stop, but Plaintiff did not obey his commands [*Id.*]. Defendant

Buck therefore deployed his taser, which caused Plaintiff to fall and strike his face on a hand rail and/or the floor [*Id.* at 2–3].

Defendant Buck approached Plaintiff and ordered him to stay on the floor and place his hands behind his back [*Id.* at 3]. Plaintiff ignored these commands, "attempted to stand, and continued to flail his arms and to resist [their] efforts to subdue him," which caused another deployment of the taser, at which point Plaintiff obeyed Defendant Buck's commands "to the extent that he allowed [Defendant Buck] to handcuff him" [*Id.*]. After Plaintiff was handcuffed, however, he "remained noncompliant and ignored control commands from [Defendant Buck] and [Defendant Moore]" but "eventually stopped resisting and was compliant" [*Id.*].

Defendant Buck testifies that he did not use any force on Plaintiff after Plaintiff was in handcuffs, never placed Plaintiff on the hallway floor or kicked him in the face, never rammed Plaintiff's head against the wall, and only handcuffed Plaintiff a single time [*Id.*]. He further states that each time an officer deployed a taser on Plaintiff during the incident, Plaintiff was actively resisting his and Defendant Moore's efforts to "control and to apprehend him" [*Id.* at 4].

### b.      Defendant Bush

Defendant Bush observed Plaintiff "screaming at a female patient in a hospital bed and ordering her to leave with him," and when she did not comply, Plaintiff strangled her and "tried to pull her out of her hospital bed" [Doc. 80-1 p. 1]. Defendant Buck attempted

to intervene, but a struggle ensued [*Id.*]. Defendant Bush attempted to check on the female, but Plaintiff then fled from Defendant Buck and "assaulted [Defendant Bush] by striking [him] in his lower back and side of [his] hip," grabbing his upper body, and shoving him to the side as Plaintiff headed to the end of the hallway with Defendants Moore and Buck in pursuit [*Id.* at 1–2]. Plaintiff continued to flee after a first taser deployment had no effect [*Id.* at 2]. Defendant Bush further states that he did not assist in holding Plaintiff to the floor and did not observe Defendant Buck strike Plaintiff, kick Plaintiff in the face, or ram Plaintiff's head into the wall [*Id.*].

### c. Plaintiff's Sworn Allegations

Plaintiff has twice filed amendments to his complaint [Docs. 37, 72] without filing an entire amended complaint in violation of the Court's local rule, E.D.TN LR 15.1, and the Court's order [Doc. 70 p. 8]. Thus, the Court has twice directed the Clerk to file an amended complaint on Plaintiff's behalf incorporating those filings [Doc. 39 p. 6; Doc. 75 p. 3], with the Clerk ultimately combining three separate filings [Docs. 2, 37, 72] into Plaintiff's second amended complaint [Doc. 76], which is now the operative complaint. As Plaintiff filed these documents separately, however, he signed them separately, and he did not incorporate his other filings in his amendments [Docs. 37, 72]. Accordingly, the Court must evaluate these filings separately to determine whether each qualifies as an affidavit that must be considered for purposes of summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (holding that a sworn complaint carries the same weight as an affidavit for purposes of summary judgment).

## (1)    Original Complaint and First Amendment

First, the bulk of Plaintiff's second amended complaint is his original complaint

[Doc. 2; Doc. 76 p. 2–17] that includes a "verification" stating:

> I the undersigned, after being duly sworn, state that I am the
> Plaintiff named above and herein, that I have read the
> foregoing COMPLAINT AT LAW FOR VIOLATIONS OF
> CIVIL RIGHTS UNDER 42 U.S.C. § 1983 and all of the
> information contained therein is true and accurate to the best
> of my knowledge, information, and belief; that the Complaint
> is not made out of levity or in collusion with the Defendants or
> for any improper purpose, but in sincerity and truth for causes
> within the complaint.

[Doc. 2 p. 16; Doc. 76 p. 17].   However, this complaint was not notarized, and the

verification therein does not substantially comply with 28 U.S.C. § 1746, as it does not

state that Plaintiff signed his complaint "under penalty of perjury."  Further, Plaintiff's first

amendment to this complaint [Doc. 37; Doc. 76 p. 18] has no verification and is not

notarized.

As such, the Court will not consider these filings [Docs. 2, 37; Doc. 76 p. 2–19] for

purposes of summary judgment.  Fed. R. Civ. P. 56(c)(4) (providing that "[a]n affidavit or

declaration used to . . . oppose a motion for summary judgment must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated"); *CareToLive v. Food & Drug

Admin.*, 631 F.3d 336, 345 (6th Cir. 2011) (holding that a statement not sworn to a public

notary or signed under penalty of perjury is not an affidavit); *Dole*, 942 F.2d at 968–69

(providing that a court may not consider unsworn statements at summary judgment).

## (2)    Second Motion to Amend

Plaintiff also filed a second motion to amend his complaint to include two amendments, and this motion was sworn before a notary[5] [Doc. 72].  Again, however, this motion did not incorporate other filings, but rather supplemented them [*Id.*].  Thus, the Court considers only these two amendments in the second amended complaint as sworn for purposes of summary judgment.

In his first sworn amendment to his complaint, Plaintiff states that after Defendant Buck intervened in his conversation with Adams, Defendant Buck grabbed Plaintiff, shoved him against the wall, and arrested him, at which point Plaintiff was detained, but Defendant Buck then rammed Plaintiff's head into the wall [Doc. 72 p. 1; Doc. 76 p. 1].  In his second sworn amendment to his complaint, Plaintiff states that after he was trying to get his handcuffs off later, Defendant Buck re-handcuffed his hands more tightly [*Id.*].[6]

### d.    Alice Adams

Adams testifies that on October 24, 2015, Plaintiff visited her in the hospital and, that during this visit, Defendant Buck ordered Plaintiff to place his hands on the wall

---

[5.] Notably, however, the verification on this motion to amend states that Plaintiff, "after being duly sworn according to law, make[s] oath that the facts stated in the foregoing **Petition for Declaratory Order** are true and correct to the best of [Plaintiff's] knowledge, information and belief" [Doc. 72 p. 2 (emphasis added)].  This is a curious verification, as the filing is not a petition for a declaratory order, but rather a motion to amend the complaint.  Regardless, even if the Court assumes that this verification is sufficient to establish that the amendments in the motion are sworn, they are insufficient to create a genuine issue of material fact.

[6.] It is apparent that Plaintiff makes this second sworn amendment only to cure his previous allegation in his complaint that Defendant Buck did not handcuff him until after Plaintiff had fled from him in the hallway [Doc. 2 p. 5], as this allegation is inconsistent with Plaintiff's first sworn amendment statement that Defendant Buck handcuffed him while he was against the wall.

because he was being arrested for domestic assault [Doc. 86 p. 4]. Plaintiff was confused and asked Defendant Buck why he was being arrested, and Defendant Buck stated that Plaintiff was being arrested for strangling Adams [*Id.*]. Adams told Defendant Buck that Plaintiff had not placed his hands on her, at which point Defendant Buck became upset and again ordered Plaintiff to place his hands on the wall [*Id.*]. Plaintiff "was compliant," and Defendant Buck handcuffed and arrested him to take him to another area [*Id.*]. Plaintiff, however, "continued to ask why" he was being arrested at which point Officer Buck "became more forceful and slammed [Plaintiff] against the wall with orders to stop resisting" and "rammed [Plaintiff's] head into the wall" before Plaintiff "fled from Officer Buck on foot out of the hallway" [*Id.* at 4]. Defendant Bush then entered and shot Plaintiff with a taser, at which point Adams "was directed to get into a closet area with a small window" [*Id.*]. When she saw Plaintiff "minutes later," his face was covered in blood [*Id.*]. Adams then refused to sign a statement stating that Plaintiff had strangled her and "confirmed to Officer Buck that [Plaintiff] had not placed his hands on [her]" [*Id.* at 4–5].

### B.    Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cty.*, 625 F.3d 935, 940 (6th Cir. 2010).

C.    **Analysis**

1.    **Excessive Force Claims**

a.    **Applicable Law**

In their motion for summary judgment, Defendants assert that they are entitled to summary judgment on Plaintiff's excessive force claims because Plaintiff pleaded guilty to charges of assault on Defendants Buck and Bush based on the same incident underlying those claims. In *Heck*, the Supreme Court held that if a judgment for plaintiff necessarily implies the invalidity of an underlying criminal conviction, the action must be dismissed unless the plaintiff can show the conviction has been reversed on direct appeal, expunged, declared invalid by a state court, or called into question by a federal court's issuance of a writ of habeas corpus. 512 U.S. at 486.

The Sixth Circuit has specifically held that "an officer's excessive use of force is a defense to a charge of resisting arrest under Tennessee law" and that *Heck* therefore bars a claim for excessive force under § 1983 that "arise[s] out of the same events" as those underlying a conviction for resisting arrest. *Parvin v. Campbell*, 641 F. App'x 446, 450

(6th Cir. 2016). Similarly, Defendants' uses of force against Plaintiff would have been an affirmative defense to Plaintiff's charges for assault on Defendants Buck and Bush to which Plaintiff pled guilty under Tennessee law. Tenn. Code Ann. § 39-11-611; *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993) (providing that "self-defense is a complete defense to crimes of violence").

Further, where a plaintiff's allegations of excessive force as to one officer arise out of the same incident underlying his conviction(s) for assault of another officer, *Heck* likewise bars those excessive force claims. *Cummings v. City of Akron*, 418 F.3d 676, 682– 83 (6th Cir. 2005) (affirming lower court's finding that the plaintiff's excessive force claims against a city and two officers were barred by *Heck* where the plaintiff had been convicted of a misdemeanor assault charge as to one of the officers because the same struggle gave rise to both the assault conviction and plaintiff's excessive force claims). However, the Sixth Circuit has noted that *Heck* may not bar § 1983 claims alleging that excessive force occurred "'*after* the suspect ceases resisting arrest.'" *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 611–12 (6th Cir. 2014). Thus, *Heck* bars Plaintiff's claims for excessive force against Defendants[7] to the extent that they arise out of the same events underlying his assault convictions, unless the alleged uses of excessive force

---

[7]. While Plaintiff was not charged with any assault of Defendant Moore, his assaults of Adams and Defendants Buck and Bush are "inextricably intertwined" with the acts of Defendant Moore alleged in the complaint such that any judgment in Plaintiff's favor as to any of his excessive force claims "would necessarily imply the invalidity" of his underlying assault convictions. *Cummings*, 418 F.3d at 682–83.

occurred after Plaintiff had been arrested and ceased resisting arrest in a manner that would sufficiently separate the excessive force acts that Plaintiff alleges from the acts underlying Plaintiff's assault convictions.

**b.     Defendants' Evidence**

As set forth above, Defendants have filed a copy of the three relevant criminal judgments against Plaintiff for assault arising out of the incident at issue in his complaint, the transcript of the hearing at which Plaintiff pled guilty to these charges that demonstrates that Plaintiff pled guilty to assaulting Adams by strangulation or attempted strangulation on October 24, 2015, and to assaulting Defendants Buck and Bush when they attempted to intervene, and the affidavits of complaint underlying Plaintiff's assault convictions [Doc. 53-1 p. 17–19; Doc. 53-2; Doc. 88-1].  Also, Defendants Buck and Bush have set forth sworn testimony that they did not use excessive force against Plaintiff after he was detained and/or handcuffed, but rather used force only to subdue Plaintiff as he repeatedly and violently attempted to resist arrest by attacking them and fleeing [Docs. 80-1, 80-2].

**c.     Plaintiff's Evidence**

Taken together, Plaintiff's sworn amendments to his complaint and Adams's affidavit establish evidence that Plaintiff complied with Defendant Buck's order to get up against the wall, but after Defendant Buck had handcuffed and detained Plaintiff, he

rammed Plaintiff's head into the wall before Plaintiff fled[8] [Doc. 72 p. 1; Doc. 76 p. 1; Doc. 86 p. 4–5].

### d.    Analysis

First, as set forth above, the only excessive force claim in Plaintiff's second amended complaint that Plaintiff's sworn filings address is Defendant Buck's act of ramming Plaintiff's head into the wall after he had intervened in Plaintiff and Adams's conversation, placed Plaintiff against the wall, and handcuffed him [Doc. 72; Doc. 76 p. 1, 6; Doc. 86 p. 4].  Thus, Defendants have established that no genuine issue of material fact remains as to all other excessive force claims in Plaintiff's second amended complaint through their sworn evidence as set forth above and they are entitled to summary judgment on those claims.

Accordingly, the remaining issue before the Court is whether Plaintiff's two sworn amendments in his second amended complaint [Doc. 76 p. 1] and Adams's affidavit [Doc. 86 p. 4–5] are sufficient evidence from which a reasonable juror could find that *Heck* does not bar Plaintiff's excessive force claim alleging that Defendant Buck "ramm[ed]"

---

[8.] In her affidavit filed with Plaintiff's response in opposition to the motion for summary judgment, Adams also alleges after he had handcuffed Plaintiff, Defendant Buck "slammed" Plaintiff into the wall "with orders to stop resisting" before "ramming" Plaintiff's head into the wall [Doc. 86 p. 4].  While Plaintiff's sworn amendment to his complaint does state that Defendant Buck shoved him against the wall before Plaintiff placed his hands on the wall, it contains no allegation that Defendant Buck "slammed" Plaintiff into the wall after Plaintiff was handcuffed [Doc. 76 p. 1, 6], and thus the Court does not consider this allegation from Adams a claim for relief.  Further, to the extent Plaintiff intended his statement in his sworn amendment to his complaint that Defendant Buck "shoved" him against the wall to state a claim for excessive force, it does not.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (holding that "[a]n inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim").

Plaintiff's head into the wall because Plaintiff had ceased resisting his arrest at the time of this act in a manner that separates the event underlying his conviction for assault of Defendant Buck from this use of force. The Court finds that they are not.

Specifically, even accepting as true Plaintiff and Adams's allegations that Defendant Buck intervened in their conversation, successfully detained and handcuffed Plaintiff while Plaintiff was against the wall, and then "ramm[ed]" Plaintiff's head into the wall, at which point Plaintiff fled, these allegations do not refute Defendant Buck's sworn testimony that Plaintiff turned and struck Defendant Buck in the face with his elbow before he fled [Doc. 80-2 p. 2], nor do they indicate that Plaintiff was not otherwise resisting Defendant Buck's detention and arrest of him at that time [Doc. 72, Doc. 86 p. 4–5]. In other words, Plaintiff's sworn amendments and Adams's affidavit conspicuously fail to state that Plaintiff did not strike Defendant Buck in the face or otherwise resist Defendant Buck's attempts to keep Plaintiff detained during the confrontation in which Defendant Buck "ramm[ed]" Plaintiff's head into the wall.

Moreover, even if Plaintiff's sworn filings did state as much, the record establishes that Defendant Buck's act of "ramming" Plaintiff's head into the wall occurred after Defendant Buck had intervened in Plaintiff and Adams's conversation, which is the exact confrontation underlying Plaintiff's conviction for assault on Defendant Buck in which Plaintiff admitted to striking Defendant Buck in the face with his elbow [Doc. 53-1 p. 18–19]. Thus, *Heck* would still bar this excessive force claim, as this alleged excessive force from Defendant Buck would have supported an affirmative defense of self-defense to

21

Plaintiff's charge of assault on Defendant Buck under Tennessee law. Tenn. Code Ann. § 39-11-611; *Ivy*, 868 S.W.2d at 727; *Cummings*, 418 F.3d at 682–83 (holding that *Heck* barred excessive force claim where the plaintiff could have raised such force as a defense to the assault charge, but instead chose not to contest the charge). To put it another way, as the record establishes that Defendant Buck's act of "ramming" Plaintiff's head into the wall and Plaintiff's act of striking Defendant Buck in the face with his elbow that resulted in Plaintiff's conviction for assault of Defendant Buck happened in the same confrontation, they are "inexplicably intertwined," and *Heck* therefore bars Plaintiff's claim for excessive force against Defendant Buck arising out of this act. *Cummings*, 418 F.3d at 682–83.

Thus, the undisputed sworn evidence in the record establishes that Plaintiff's claims for excessive force arise out of the same incidents underlying Plaintiff's state law convictions for assault of Defendants Buck and Bush [Doc. 53-2]. As nothing in the record suggests that those convictions have been declared invalid in any way, *Heck* bars these claims.

### 2.    State Law Claims

As set forth above, this action is also proceeding as to Plaintiff's state law claims for aggravated assault, as the Court has supplemental jurisdiction over these claims through 28 U.S.C. § 1367. However, a district court may decline to exercise supplemental jurisdiction over such claims if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Accordingly, as the Court has determined that *Heck*

bars Plaintiff's excessive force claims under § 1983, it will decline to exercise supplemental jurisdiction over the state law claims.

III.    Conclusion

For the reasons set forth above, Plaintiff's motion to compel discovery [Doc. 78] will be **DENIED**, Defendants' motion for summary judgment [Doc. 80] will be **GRANTED**, all pending other motions [Docs. 79, 83] will be **DENIED as moot**, and this action will be **DISMISSED without prejudice**. Also, the Court **CERTIFIES** that any appeal from this order would not be taken in good faith.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**ENTER**:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE